IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 4:15-CR-3083 |
| vs. | FINAL RESTITUTION FINDINGS |
| JEFFREY M. RINDONE, | |
| Defendant. | |

     This matter is before the Court for a final determination of the amount of restitution to be awarded pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §§ 3613A, 3663A. Previously, the Court preliminarily found that that restitution would be ordered to the victim, Westgate Bank, in the amount of $258,023.87. *See* filing 66. But the Court held another hearing, and the Court's view changed in light of the evidence adduced at that hearing. The Court will order restitution in the amount of $10,800.

     The Court recognizes that this has been a long time in coming. I apologize for that. This has been a very difficult case because my sense of the "right" result here—the *just* result—cannot be reconciled with the principles of causation explained below. The defendant *should* be paying more than this. But when that instinct comes up against the cold, hard math, those calculations demand a different result.

     The Court previously set forth a narrative of the facts of the case, *see* filing 66, and that need not be repeated. It is, however, worth revisiting the legal framework that the Court explained. Although the government bears the burden of proving the restitution amount by a preponderance of the evidence, 18 U.S.C. § 3664(e), the Court must reasonably estimate the loss

when the amount lost through fraud is difficult to estimate, *United States v. Adejumo*, 848 F.3d 868, 870 (8th Cir. 2017); *see United States v. Smith*, 929 F.3d 545, 548 (8th Cir. 2019). Restitution is compensatory, not punitive, and in a fraud case, it is limited to the actual loss directly caused by the defendant's criminal conduct in the course of the scheme alleged in the indictment. *United States v. Lundstrom*, 880 F.3d 423, 446 (8th Cir. 2018); *United States v. Chaika*, 695 F.3d 741, 748 (8th Cir. 2012).

Restitution may only be awarded for the loss caused by the specific conduct that is the basis of the offense of the conviction. *United States v. DeRosier*, 501 F.3d 888, 896 (8th Cir. 2007). The amount of restitution cannot exceed the actual, provable loss realized by the victims. *United States v. Martinez*, 690 F.3d 1083, 1088 (8th Cir. 2012); *see United States v. Gammell*, 932 F.3d 1175, 1180 (8th Cir. 2019); *Adejumo*, 848 F.3d at 870. And the causal connection between the defendant's acts and the victim's losses must not be unreasonably extended. *United States v. Spencer*, 700 F.3d 317, 323 (8th Cir. 2012). Restitution for funds not actually lost by a victim would be an impermissible windfall, so a bank may recover restitution only to the extent sufficient evidence has proven its ultimate loss. *Adejumo*, 848 F.3d at 870.

Any of the fraudulently obtained funds that were actually recovered by the Bank from its later sale of collateral should be offset against the Bank's initial loss. *See Robers v. United States*, 572 U.S. 639, 640-41 (2014); *United States v. Oladimeji*, 463 F.3d 152, 160 (2d Cir. 2006); *United States v. Shepard*, 269 F.3d 884, 887-88 (7th Cir. 2001). But, while the government bears the burden of demonstrating the amount of the loss sustained as a result of the offense, the defendant bears the burden of establishing entitlement to an offset against that loss. *United States v. Miell*, 744 F. Supp. 2d 961, 965 n.8 (N.D. Iowa 2010); *see United States v. Ruff*, 420 F.3d 772, 775

(8th Cir. 2005) (remanding for trial court to determine if *defendant* could establish right to offset); *see also*, Robers, 572 U.S. at 649 (Sotomayor, J., concurring); *United States v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014); *United States v. Bane*, 720 F.3d 818, 828 (11th Cir. 2013); *United States v. Bryant*, 655 F.3d 232, 254 (3d Cir. 2011); *United States v. Elson*, 577 F.3d 713, 734 (6th Cir. 2009); *United States v. Serawop*, 505 F.3d 1112, 1127 (10th Cir. 2007); *United States v. Karam*, 201 F.3d 320, 326 (4th Cir. 2000); *United States v. Parsons*, 141 F.3d 386, 393 (1st Cir. 1998); *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998); *cf.*, *United States v. Boccagna*, 450 F.3d 107, 120 n.9 (2d Cir. 2006); *United States v. Pugh*, 445 F.3d 1066, 1068 (8th Cir. 2006) (burden is on defendant to show payment of restitution debt); *United States v. Crawford*, 169 F.3d 590, 593 (9th Cir. 1999).

Previously, the Court found the evidence sufficient to prove a loss of $258,023.87. Filing 66 at 5. The Court noted, however, that "the losses beyond those attributable to fraud could have been caused by any number of things, including underbid contracts, mismanagement, or market conditions," none of which would warrant restitution—but, the Court found, there was no evidence "specifically showing how some of the properties' eventual market value was the product of improvements made to the properties by fraudulently obtained funds." Filing 66 at 5. That changed at the June 16, 2017 hearing: the Court now finds that the defendant has carried his burden of establishing an offset against the Bank's losses for amounts that were obtained by fraud, but spent on improvements to the subject properties.

Specifically, the defendant testified that with the exception of some amounts set aside for personal living expenses, all of the funds obtained by fraudulent checks were spent on other properties that were also securing the Bank's loans. The Court finds that testimony credible. It was, in fact, clear

from the testimony of both the defendant and Bank president Carl Sjulin that the losses the Bank sustained on these properties were primarily attributable not to fraud, but to poor business practices.

Most of those poor business practices were, admittedly, the defendant's. But the issue here is criminal restitution for losses caused by fraud, not civil liability for repayment of a loan. The evidence is that the defendant and his brother were poor businessmen who made bad business decisions— underbidding contracts, mismanaging subcontractors, and (according to Sjulin) doing substandard work as well. But none of that is illegal. And the Bank is also responsible for its business decisions—for extending credit to the Rindones in the first place, and allowing them to overdraft their account and exceed borrowing limitations.

The defendant committed fraud by drawing on Bank loans tied to specific projects and spending the funds on other projects, in an effort to keep the business afloat by completing homes for sale—but there is no reason to be believe (except for funds diverted to personal expenses) that the Bank did not recover as much of that value from the properties it eventually sold as would have been recovered had the money actually gone to the projects it was supposed to. In sum, the evidence suggests that these were bad business deals, and that the Bank lost money primarily because it loaned money to a business venture that failed—not due to fraud.

That said, some of the funds obtained were, by the defendant's admission, diverted to personal use. The precise amount cannot be determined from the defendant's testimony, but the Court need not calculate the net loss precisely, so long as it can be reasonably estimated. *Adejumo*, 848 F.3d at 870; *see Smith*, 929 F.3d at 548. Because the defendant has the burden of proving entitlement to an offset, the Court's calculation of the

amount diverted for personal use takes the defendant's testimony in the light most favorable to the Bank. The defendant estimated that the amount taken for personal expenses was between $300 and $600 per month. The Court will assume the higher figure, and assume that both Jeffrey and Scott Rindone took funds for those purposes. The fraud lasted for about 9 months—from April to December 2013. Multiplying $600 per month, by 2 brothers, by 9 months, results in a restitution amount of $10,800.

IT IS ORDERED that the defendant, Jeffrey Rindone, pay $10,800 in restitution.

Dated this 23rd day of October, 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge